IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

FILED

2004 JUN 16 A 9: 37

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____DEP. CLERK

PENNSYLVANIA HIGHER )
EDUCATION ASSISTANCE AGENCY, )
)
Plaintiff, )
) No. 4:04-cv-48
v. ) Jarvis/Shirley
)
TIMOTHY R. MERRELL, )
)
Defendant. )

## COMPLAINT FOR BREACH OF PROMISSORY NOTE AND ON SWORN ACCOUNT

Plaintiff, Pennsylvania Higher Education Assistance Agency ("PHEAA"), for its complaint against Timothy R. Merrell ("Merrell") states as follows:

### THE PARTIES

1. Plaintiff, Pennsylvania Higher Education Assistance Agency ("PHEAA") is an organization existing pursuant to the laws of the United States of America and the Commonwealth of Pennsylvania with its principal place of business located at 1200 North Seventh Street, Harrisburg, Pennsylvania. The primary business of Plaintiff is creating, guarantying, and collecting federally funded higher education loans for qualified students.

2. Defendant, Timothy R. Merrell ("Merrell"), is an individual resident of Tennessee with his principal residence located at 46 Gimlet Road, Fayetteville, Tennessee 37334.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the matter in controversy is a federal question arising under the laws of the United States, specifically 42 U.S.C. § 292, *et seq.* and 42 C.F.R. § 60.1, *et seq.*

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant resides in the State of Tennessee and in this judicial district.

## FACTS

5. Defendant executed a Promissory Note ("Note") to PHEAA for ninety-two thousand nine hundred sixty-two dollars and 02/100 ($92,962.02) under the Health Education Assistance Loan Program, a program governed by the United States Federal Government. The disbursement of this Note occurred on April 20, 1999 in the actual amount of ninety-two thousand nine hundred sixty-two dollars and 02/100 ($92,962.02). The Note is attached hereto as Exhibit 1.

6. Defendant Merrell has failed to make payments on the Note pursuant to the terms of the Note. Specifically, Defendant has not made a monthly payment since January 22, 2003. Defendant received a Temporary Hardship Forbearance from

2

February 1, 2003 to July 31, 2003. Following the forbearance, Defendant Merrell failed to make a monthly payment.

7. PHEAA has demanded payment and, as of the date of this Complaint, no further payments have been made on the debt.

8. Defendant has failed to make all payments on the Note. Therefore, pursuant to the section entitled "Default" in the Note, PHEAA has declared Defendant in default and has instituted this legal proceeding against Defendant in the form of this Complaint. On page 1 of the Note, under "Promise to Pay" and on Page 3 in paragraph 1 of the section entitled "Borrower's Responsibilities," the Note provides the Defendant will be responsible for attorney's fees, in addition to his original loan amount, late fees, and accrued interest.

## CAUSES OF ACTION

### COUNT I

### SWORN ACCOUNT

9. Paragraphs 1 through 8 are incorporated herein by reference.

10. After credit for any payments made by or on behalf of Defendant pursuant to the Note with PHEAA, Defendant continues to owe PHEAA for debts due by Sworn Account as set forth in Exhibit 2 to this Complaint in the amount of $93,492.44, which

3

includes all interest and late fees as of May 25, 2004 for which demand has been made and wrongfully refused. Per diem interest is continuing to accrue on the debt due at the rate of $7.18 from May 25, 2004.

## COUNT II

### BREACH OF CONTRACT

11. Paragraphs 1 through 10 are incorporated herein by reference.

12. By its failure to pay this account as agreed to by the parties, Defendant has breached the terms of the Note with PHEAA causing damage to PHEAA in an amount to be determined at trial, but not less than $93,492.44, plus per diem interest of $7.18 from May 25, 2004.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that it have and recover judgment against Defendant for:

A. Actual and compensatory damages based on sworn account and, in the alternative, arising from Defendant's breach of contract in the amount of $93,492.44;

B. Prejudgment and post-judgment interest pursuant to the terms of the Promissory Note;

C. Reasonable attorney's fees pursuant to the terms of the Promissory Note; and

D. All other further relief to which Plaintiff may be entitled.

4

Respectfully submitted,

*[signature]*

Jennifer Ziegenhorn (016351)
Holly N. Knight (17940)
Keri M. Cash (22185)
HUSCH & EPPENBERGER, LLC
200 Jefferson Avenue, Suite 1450
Memphis, Tennessee 38103
(901)523-1123

Attorneys for Plaintiff, Pennsylvania Higher Education Assistance Agency

5

# THE BIG PAYOFF FEDERAL HEAL CONSOLIDATION LOAN APPLICATION PROMISSORY NOTE
## MISSOURI HIGHER EDUCATION LOAN AUTHORITY ("MoHELA")

Student Loan Servicing Center
P.O. Box 8176, Harrisburg, PA 17105-8176   Telephone 1-800-666-4352

March 29, 1999
199905070202

**WARNING:** Any person who knowingly makes a false statement or misrepresentation in a Federal HEAL transaction, bribes or attempts to bribe a Federal official, fraudulently obtains a Federal HEAL loan or commits any other illegal action in connection with a Federal HEAL Consolidation loan is subject to a fine or imprisonment under Federal statute.

## SECTION I - TO BE COMPLETED BY APPLICANT

| 1. SOCIAL SECURITY NO. | 2A. NAME (Last, First, MI) | 2B. OTHER NAME USED (First, Middle, Last) |
|---|---|---|
| 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 | MERRELL, TIMOTHY R | |

| 3. CURRENT ADDRESS (Street) (Apartment Number) | 4. DATE OF BIRTH | 5. DRIVER'S LICENSE NUMBER |
|---|---|---|
| 2250 THURSTON TAYLOR PARKWY, B | 11 14 57 | TN 45787605 |

| (City) (State) (Zip) | 6. CITIZENSHIP STATUS |
|---|---|
| FAYETTEVILLE TN 37334- | X A. U.S.Citizen   B. U.S. National   C. Permanent Resident   D. Other |

| TELEPHONE (Area Code - Number) | If you checked "C" or "D" attach a copy of your I-151 or I-551 ("green card") and complete item 7. |
|---|---|
| Home: 931-433-1485   Office: 931-433-9600 | |

**7. U.S. PERMANENT RESIDENT**

| | 8. REPAYMENT STATUS (Check one) |
|---|---|
| Country:    Registration No.: | ___ A. Grace   ___ B. Internship/Residency   ___ C. Deferment   ___ D. Forbearance   X E. Repayment |

**9. SCHOOL AND GRADUATION INFORMATION**  (CHECK ONE)  X Graduated  ___ Withdrew

School Attended: 024913 UNIV OF OST MED HLTH SC   Discipline: POD Podiatric   Graduation/Withdrawal Date: 05/01/1996

**10A. NAME OF PARENTS (OR GUARDIANS) OR IF DECEASED, NEAREST LIVING RELATIVE OTHER THAN SPOUSE OR SPOUSE'S PARENTS.**

| Name and relationship to you | Address (Include Number, Street, City, State, & Zip) | Telephone Number |
|---|---|---|
| FA  ELDEN MERRELL | 31929 SKYLINE DRIVE, ARDMORE, TN 33449 | 931-427-2676 |
| MO  TANDY MERRELL | 31929 SKYLINE DRIVE, ARDMORE, TN 33449 | 931-427-2676 |

**10B. NAME OF SPOUSE AND TWO LIVING ADULT RELATIVES OTHER THAN PERSONS LISTED ABOVE.**

| Name and relationship to you | Address (Include Number, Street, City, State, & Zip) | Telephone Number |
|---|---|---|
| AMY E MERRELL | 151 SIMMONS CIRCLE, FAYETTEVILLE, TN 37334- | 931-433-1485 |
| MELISA BOUCHARD | 2050 OLD FORGE WAY, MARIETTA, GA 30068- | 770-552-5409 |
| TRACY MERRELL | 1803 WARD DRIVE, APT 201, MURFREESBORO, TN 37129- | 615-848-1902 |

**11. EMPLOYER INFORMATION**

Name: SELF EMPLOYED   Address: 2250 THURSTON TAYLOR PARKWY, SUITE B, FAYETTEVILLE   Phone: 931-433-9600

**12. ARE YOU DELINQUENT ON THE REPAYMENT OF ANY FEDERAL DEBT(S)?**   X NO   ___ YES   If "YES" please provide a written explanation on a separate sheet of paper and attach to application.

**13. HAVE YOU EVER DEFAULTED OR ARE YOU NOW IN DEFAULT ON ANY LOAN (COMMERCIAL, EDUCATION, ETC.) OR OTHER OBLIGATIONS?**   X NO   ___ YES   If "YES" refer to instructions in item 12.

| 14. ESTIMATED BALANCE OF OTHER EDUCATIONAL LOANS | 15. ESTIMATED BALANCE OF OTHER DEBTS | 16. ANNUAL INCOME |
|---|---|---|
| $0.00 | $0.00 | $0.00 |

**17. FEDERAL HEAL INDEBTEDNESS** — Please answer as accurately as possible. If you have more than 8 loans to be combined provide information about them on a separate sheet. Federal HEAL information may be found on your monthly billing statement or by calling your lender/holder.

| | Current Holder/Lender | Servicer | Original Principal | Date Disbursed (Mo/Day/Yr) | Interest Rate | Approximate Current Principal |
|---|---|---|---|---|---|---|
| 1. | SALLIEMAE | LSC | $16,999.00 | 02/10/93 | 6.87% | $24,561.84 |
| 2. | SALLIEMAE | LSC | $4,842.00 | 07/07/93 | 6.87% | $6,896.07 |
| 3. | SALLIEMAE | LSC | $3,469.00 | 08/18/93 | 6.87% | $4,918.68 |
| 4. | SALLIEMAE | LSC | $9,939.00 | 01/05/94 | 6.50% | $13,672.54 |
| 5. | SALLIEMAE | LSC | $13,787.00 | 09/28/94 | 6.50% | $18,310.13 |
| 6. | SALLIEMAE | LSC | $1,751.00 | 02/08/95 | 6.62% | $2,308.70 |
| 7. | SALLIEMAE | LSC | $17,488.00 | 05/24/95 | 6.62% | $22,294.06 |
| 8. | | | | | % | |
| | | | | **ESTIMATED TOTAL FEDERAL HEAL DEBT** | | **$92,962.02** |

This Application Promissory Note represents a consolidation of all of my Federal HEAL loans, as identified above. The word "Note" refers to this Application Promissory Note. In this Note, the words "I", "me" or "my" refer to the Borrower whose signature appears below. The word "Lender" refers to "MoHELA" or any subsequent holder to whom this Note is assigned. "Loan" refers to the Federal HEAL Consolidation Loan which the Lender is making to me.

## PROMISE TO PAY

I promise to pay MoHELA, the Lender, or its agent, Pennsylvania Higher Education Assistance Agency, or the subsequent holder of this Note, the Principal Amount advanced on my behalf, as described below, plus interest on the principal, according to a repayment schedule described under Repayment in this Note. If I fail to pay all of a required installment payment or fail to provide written evidence that verifies eligibility for deferment or forbearance of a Loan payment within 30 days after the payment due date I will pay a late charge to the Lender equal to 5% of the unpaid portion of the payment due, plus all reasonable attorney's fees, and other costs and charges that are permitted by Federal regulations and that are necessary for the collection of any amount not paid when due. I understand that the amount of my Loan will be based on the pay-off balances of Federal HEAL loans which are being paid off by the Loan as provided by the creditors of such loans and may exceed the estimate of such pay-off balances.

## DETERMINATION OF "PRINCIPAL AMOUNT"; CONSUMMATION OF LOAN

After the Lender approves a Federal HEAL Consolidation Loan, and after I have signed this Note and returned the Note to the Lender, the Lender will determine the balance of the Loan. Then the Lender will send a Disclosure Statement to me which will explain the principal amount, interest rate, payment schedule, consolidation date and other information concerning the Loan. My Federal HEAL Consolidation Loan will be considered "consummated" when my Lender, or its agent, advances funds on my behalf to all my creditors who currently hold Federal HEAL loans named on this Note in order to pay off those loans on my behalf. I understand that the Loan will not be considered or consummated until the consolidation date as shown on my Disclosure Statement. I will review my Disclosure Statement upon receiving it and will contact the Lender or its agent prior to the consolidation date if I have any questions.

## GENERAL

The terms of this Note shall be construed according to Federal law (42 U.S.C. 292-292p) and the Federal regulation (42 CFR Part 60) governing the administration of the Health Education Assistance Loan (HEAL) Program, copies of which are on file with the Lender. Except to the extent that Federal law applies, the laws of the Commonwealth of Pennsylvania will apply to this Note in all respects, excluding conflict of law provisions.

## CERTIFICATION BY BORROWER

I hereby certify by my signature that the information contained on this Note is true, complete and correct to the best of my knowledge and belief and 1) That I have graduated from an eligible Federal HEAL school and all my loans are listed. 2) That I select the Federal HEAL Loan Consolidation Program and request that the Lender, and the Pennsylvania Higher Education Assistance Agency, Agent for the Lender, consolidate my Federal HEAL loans under this program on my behalf, and I am requesting the Lender, and PHEAA its Agent, to rely on my good faith certification of the above and to begin processing all my Federal HEAL loans. 3) That I have not completed a Federal HEAL consolidation plan agreement with another lender. 4) That I authorize my current Federal HEAL loan lender/holder to release any Federal HEAL loan information requested by the consolidating Lender, or its agent, for the purpose of verifying student loan information, in order that I may consolidate my Federal HEAL loans into a Federal HEAL Consolidation Loan. This information is for the use of the lender in consolidating my Federal HEAL loans. I have read, understand and agree to the terms of the "Borrower's Rights" statement and the "Borrower's Responsibilities" statement. I have been informed of the actions the Lender/holder and the Federal government can take in the event that I fail to meet scheduled payments. I also authorize the Lender and PHEAA its Agent, or any subsequent holder to check my credit history, and to discuss my credit history with my lenders and to share any information concerning my Federal HEAL loans that my lender requests in connection with such loan consolidation. I authorize my lender and its agent to use information on this Note for obtaining my address.

I hereby authorize MoHELA, its agent, subsequent holders and the guarantor to disclose, discuss and make inquiries regarding any information relating to this application and the Loan based upon this application whenever the disclosure of the information is necessary for the processing of this application or the servicing, transfer, or collection of the Loan. The information about my application and my Loan account may be furnished and shared during the life of the Loan with subsequent holders of the Loan, contractors and agents who assist MoHELA, subsidiaries and affiliates, credit bureaus, parents or relatives listed on the Loan application, guarantor, federal or state agencies or private parties who may be able to provide information necessary for the processing of my loan application or to assist in the servicing or collection of the loan, and others who require the MoHELA to verify the condition and existence of my Loan. I understand I will be sent a promissory note and a disclosure and will have the option to choose my repayment plan after my Loan is disbursed. I agree that all proceeds from the Loan will be used solely to repay existing Federal HEAL loans. By signing this Note below I acknowledge and certify that I have received an exact copy of pages two through four of this Note with all applicable blanks filled in; the additional terms on pages two, three and four of this Note, any addendum sheets, and the Disclosure Statement, which I will receive later, are part of this Note, and intending to be legally bound, I have read, understand, and agree to the terms on all pages of this Note. A copy of this authorization may be deemed to be an original.

Signature of Borrower: X _[signature]_    Date: 4-5-99

REV. 1/95   READ BORROWER'S RIGHTS AND BORROWER'S RESPONSIBILITIES ON REVERSE SIDE OF THIS APPLICATION.

LENDER COPY

**EXHIBIT 1**

The Lender and I further understand and agree that:

## NOTIFICATION

I must immediately notify the Lender in writing if any of the following occurs to me before the loan is repaid in full: 1) change of address, 2) name change (e.g., maiden name to married name), 3) failure to begin any activity eligible for deferment status, or 4) cessation of participation in an activity eligible for deferment status.

## INTEREST

1. Interest accrues on the unpaid principal balance of the Loan from the date the Loan is consummated. Payment of the interest accruing before the beginning of the repayment period may be postponed until the date upon which repayment of principal is required to begin or to resume. During my Grace Period, Deferment Period, and Repayment Period interest which has accrued and is not paid may be added to the principal amount of this Loan at the Lender's option every 12 months (annually) and at the beginning of any repayment period.

2. Commencing on the date of disbursement and for twelve (12) calendar years thereafter interest shall be charged on the unpaid principal balance at an interest rate which will fluctuate quarterly based on a rate calculated by the Secretary of the Department of Health and Human Services ("Secretary") for each calendar quarter based on the average of the bond equivalent rates for the ninety-one day U.S. Treasury Bills auctioned for the preceding calendar quarter, plus two percent (2.00%) rounding this figure up to the nearest one-eighth of one percent. Commencing on the thirteenth (13th) annual anniversary of the disbursement date and for each year thereafter, interest shall be charged on the unpaid principal balance at an interest rate which will fluctuate quarterly and will not exceed the rate calculated by the Secretary of the Department of Health and Human Services ("Secretary") for each calendar quarter based on the average of the bond equivalent rates for the ninety-one day U.S. Treasury Bills auctioned for the preceding calendar quarter, plus two and one half percent (2.50%) rounding this figure up to the nearest one-eighth of one percent.

## PREPAYMENT

I may, at my option and without penalty, prepay all or any part of the principal and accrued interest at any time.

## REPAYMENT

1. Repayment shall be made in monthly installments over a repayment period which starts the first day of the tenth month after the month in which;

(A) I cease to be a full-time student at a HEAL school;
(B) (1) I cease to be a participant in an accredited internship or residency program of not more than four years in duration, or
(2) I complete the fourth year of an accredited internship or residency program of more than four years in duration; or
(C) I cease to be a participant in a fellowship training program not in excess of two years or a participant in a full-time educational activity not in excess of two years which:
(1) is directly related, as defined in program regulations to the health profession for which I prepared at a HEAL school, and
(2) in which I may engage during a two-year period which begins within twelve months after I complete my participation in an internship or residency program described in clause (B)(1) or clause (B)(2) of this paragraph or before I complete my participation in such an internship or residency program.

2. The terms and period of repayment will be calculated by the Lender. The repayment period shall not be less than ten years nor more than twenty-five years, as determined by the Lender, and shall exclude any periods of DEFERMENT or FORBEARANCE. The entire period of repayment, including deferment or forbearance may not exceed more than thirty-three years from the date this Loan is consummated.

3. Between thirty days but not more than sixty days before my repayment period is scheduled to begin, I will contact the Lender to establish the precise terms of my repayment. I may select a monthly repayment schedule with substantially *equal* installments, a monthly repayment schedule with *graduated* installments that increase in amount over the repayment period, or a monthly repayment schedule with payments that are based on my income during the first five years of repayment, with substantially equal monthly payments over the remaining term. If I do not contact the Lender and do not respond to contacts from the Lender, the Lender will calculate the monthly repayment schedule based on substantially equal installment payments.

4. The Lender may calculate the repayment schedule and provide me with a copy of it prior to the beginning of the repayment period. At its option, the Lender and its agent may recalculate the schedule of payments annually so as to amortize the balance of principal, interest and other charges over the remaining repayment term of the Loan. The Lender will provide me with a revised schedule of payments prior to the first scheduled payment under the revised schedule. I understand that the Loan must be repaid in accordance with the repayment schedule, as revised by the Lender from time to time.

5. If my Loan becomes delinquent the Lender will notify an appropriate consumer credit reporting agency as described under Credit Reporting Agency below, and take any action described under Default below and any other action permitted under applicable law.

## CREDIT REPORTING AGENCY

The Lender may disclose my Loan, and any other relevant information, to appropriate consumer credit reporting agencies. If I am more than sixty days past due in making a scheduled payment, the Lender will notify an appropriate consumer credit reporting agency of my past due status, which will adversely affect my credit rating, and provide the credit reporting agency any other relevant information.

## DEFERMENT

1. Monthly installments of principal and interest need not be paid, but interest shall accrue:

(A) When I am carrying a full-time course of study at a HEAL school or at an institution of higher education eligible to participate in the Federal Stafford Loan Program.

(B) When I am participating in a fellowship training program or full-time educational activity for not in excess of two years as described in paragraph 1 under REPAYMENT above.

(C) Not in excess of three years for each of the following when I am:

(1) a member of the Armed Forces of the United States;
(2) in service as a volunteer under the Peace Corps Act;
(3) in service as a full-time volunteer under Title I of the Domestic Volunteer Service Act of 1973; and
(4) a member of the National Health Service Corps;

(D) Not in excess of four years when I am a participant in an accredited internship or residency program. Except that this limitation of four years also includes any period of deferral of the onset of the repayment period for participation in an internship or residency program.

(E) Not in excess of one year, if I received the loan while enrolled in a school of chiropractic and I graduated from a school of chiropractic; and

(F) Not in excess of three years, when I have completed and accredited internship or residency training program in osteopathic general practice, family medicine, general internal medicine, preventive medicine, or general pediatrics, and am practicing primary care.

2. To receive a deferment, including a deferral of the onset of the repayment period (see REPAYMENT), I must, prior to the onset of the activity and annually thereafter, submit to the Lender evidence of my status in the deferment activity and evidence that verifies deferment eligibility of the activity. It is my responsibility to provide the Lender with all required information or other information regarding the requested deferment.

## DEATH/DISABILITY

If I die or become totally and permanently disabled, my unpaid indebtedness on this Note shall be canceled in accordance with applicable Federal statute and regulations.

## FORBEARANCE

I have the right to be granted forbearance whenever I am temporarily unable to make scheduled payments on my Loan and I continue to repay the Loan in an amount commensurate with my ability to repay the Loan, unless the Secretary determines that my default is inevitable and the forbearance will be ineffective in preventing default. A lender must exercise forbearance in accordance with terms that are consistent with the thirty-three year limitation on the length of repayment if the lender and the borrower agree in writing to the new terms. Each forbearance period may not exceed six months and the total period of forbearance (with or without interruption) granted to me must not exceed two years unless an extension is granted by the Secretary.

## DEFAULT

My Loan will be in default if any of the following occur: (1) I do not make any payment when it is due; (2) I break any promise made in this Note; (3) the Lender discovers any false or misleading statement or in any other information I have given the Lender. After a default occurs, the Lender may declare the entire balance of principal, interest and other charges which I owe under this Note immediately due and payable. The Lender may then take action to collect the Loan balance, including: (a) bringing a lawsuit against me and obtaining a judgment against me; (b) referring my loan to a collection agent for further collection efforts; (c) referring my Loan to the Secretary for collection assistance, including obtaining my address from the Internal Revenue Service through the Secretary.

If I do not make payments when due the Federal Government will take over my loan and I will then owe the Government. The Federal Government will actively pursue me for repayment of the debt, including the use of collection agents and reporting my default to consumer credit reporting agencies or to the Internal Revenue Service for purpose of locating me or for income tax refund offset, and referral to the Department of Justice for litigation. I may be the subject of court action to force me to pay. The Secretary shall also cause to be reduced Federal reimbursements or payments for health services under any Federal loan to borrowers who are practicing their professions and have defaulted on their loans, and may make other administrative offsets, including salary offsets for Federal employees. The Government may also report any written off debt to the Internal Revenue Service as taxable income, and may under take any other debt collection procedures in accordance with the Claims Collection Regulations (45 CFR Part 30).

No Federal or State statute, regulation, or administrative limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action may be initiated or taken by the Secretary, the Attorney General, or other administrative head of another Federal agency, for the repayment of the amount due on this Note.

## BANKRUPTCY

I may not have my Loan discharged in bankruptcy during the first seven years of the repayment period, under any chapter of the Bankruptcy Act, including Chapter 13. I may have a Federal HEAL loan discharged in bankruptcy after the first seven years of the repayment period, excluding any periods of forbearance and deferment, only upon a finding by the Bankruptcy Court that the non-discharge of such debt would be unconscionable and upon the condition that the Secretary shall not have waived his or her rights to reduce any Federal reimbursements or Federal payments for health services under any Federal law in amounts up to the balance of the Loan.

## BORROWER'S RIGHTS

1. The Lender cannot change the terms of my Loan without my consent.
2. The Lender must provide me with a copy of the completed note when the Loan is made. The Lender must return the Note to me when the Loan is paid in full.
3. The Lender will advance funds on my behalf to all creditors who currently hold Federal HEAL loans named on this Note. The funds so advanced will be disbursed to the holder(s) of the loans designated above in order to pay off these loans on my behalf.

*I further understand that the amount of this CONSOLIDATION LOAN will equal the sum of the amounts which my creditors verify are the pay-off balances on these loans. This amount may be more or less than the estimated total balance indicated above. If verified total balance on loans to be consolidated exceeds the estimate by more than $2,000 or 5 percent, whichever is lower, the Lender will issue a new promissory note which must be signed by me before the Loan can be consummated.*

If the amount the Lender advances to the holder(s) of my current loans exceeds the amount needed to pay off my balance(s), I understand that the holder will refund the excess to the Lender for application against the outstanding principal balance of my Loan. If the amount the Lender advances to my holder(s) is less than the amount needed to pay off my balance(s), I agree to either pay off the remaining balance or to take such actions as the Lender deems appropriate, and if necessary, to authorize the Lender to include the remaining amount in an addendum to this Note.

4. The Lender will provide me with a repayment schedule before the repayment period begins.
5. If the Loan is sold from one lender to another lender, or if the loan is serviced by a new servicer, the Lender must notify me within 30 days of the transaction and I must be sent a notification which spells out my obligations to the new holder.
6. I have a right to one 9-month "grace period" before repayment begins after I have completed school attendance, internship and residency in an accredited program, or a fellowship training program or full-time educational activity approved by the Secretary for this purpose.
7. I have a right to deferment of principal and interest repayments if certain conditions exist. Under deferment I am not required to make payments on the Loan principal or interest for a period of time. However, interest continues to accrue during any deferment period. To receive a deferment, including a deferral of the onset of the repayment period (See Section 60.11(a) of the HEAL regulations) I must, prior to the onset of the activity and annually thereafter, submit to the Lender evidence of my status in the deferment activity and evidence that verifies deferment eligibility of the activity. It is my responsibility to provide the Lender with all required information regarding the requested deferment.
8. I have a right to prepay the whole or any portion of the Loan at any time without a penalty.
9. If I contact the Lender of my Loan at least 30 days but not more than 60 days before the commencement of my repayment period to establish the precise terms of repayment, I may select a monthly repayment schedule with substantially equal installments, a monthly repayment schedule with graduated installments that increase in amount over the repayment period, or a monthly repayment schedule with payments that are based on my income during the first 5 years of repayment and substantially equal monthly payments over the remaining term. If I do not contact the Lender and do not respond to contacts from the Lender, the Lender may establish a monthly repayment schedule with substantially equal installment payments, subject to the terms of my promissory note.

10. My Loan will be cancelled in the event of my death or permanent and total disability in accordance with applicable Federal statutes and regulations.
11. "Forbearance" means an extension of time for making loan payments or the acceptance of smaller payments than were previously scheduled to prevent me from defaulting on my payment obligations. I have the right to be granted forbearance whenever I am temporarily unable to make scheduled payments on my Loan and I continue to repay the Loan in an amount commensurate with my ability to repay the Loan unless the Secretary determines that my default is inevitable and the forbearance will be ineffective in preventing default. A Lender must exercise forbearance with terms that are consistent with the 33-year limitation on the length of repayment if the Lender and the borrower agree in writing to the new terms. Each forbearance period may not exceed 6 months and the total period of forbearance (with or without interruption) granted to me must not exceed two years unless an extension is granted by the Secretary.
12. The Lender must notify me in writing of the balance owed for principal, interest, and any other charges or fees owed to the Lender at least every 6 months from the time my Loan was consummated.

## BORROWER'S RESPONSIBILITIES

1. I understand that there is no interest subsidy on a Federal HEAL loan and that I must pay all interest on my Loan. If I do not make payments on time or if I default, the total amount to be repaid will be increased by late charges and may be increased by additional interest costs, attorney's fees, court costs and other collection costs.

2. I must immediately notify the Lender in writing if any of the following occurs to me before the Loan is paid in full: a. change of address, b. name change (e.g., maiden name to married name), c. failure to begin any activity eligible for deferment status, or d. cessation of participation in an activity eligible for deferment status.

3. I must notify the Lender of any occurrence which may affect my eligibility to receive or to continue to receive a deferment of principle and interest payments.

4. To receive a deferment, including a deferral of the onset of the repayment period (See Section 60.11(a) of the HEAL regulations.), I must, prior to the onset of the activity and annually thereafter, submit to the Lender evidence of my status in the deferment activity and evidence that verifies deferment eligibility of the activity. It is my responsibility to provide the Lender with all required information or other information regarding the requested deferment.

5. I understand that this Loan must be repaid in accordance with my repayment schedule. If my account becomes overdue by more than 60 days, the Lender will notify an appropriate consumer credit reporting agency of this, which may significantly and adversely affect my credit rating. The Lender will also use collection agents and utilize other collection activities (including litigation) if my account becomes overdue.

6. If I do not make payments when due, my Loan may be declared in default. If I default, the Federal Government will take over my Loan and I will then owe the Government. The Federal Government will actively pursue me for repayment of the debt, including the use of collection agents and reporting my default to consumer credit reporting agencies or the Internal Revenue Service for purpose of locating me or for income tax refund offset, and referral to the Department of Justice for Litigation. I may be the subject of court action to force me to pay. The Secretary shall also cause to be reduced Federal reimbursements or payments for health services under any Federal law to borrowers who are practicing their professions and have defaulted on their loans, and may make other administrative offsets, including salary offsets for Federal employees. The Government may also report any written off debt to the Internal Revenue Service as taxable income, and may undertake any other debt collection procedures in accordance with the Claims Collection Regulations (45 CFR Part 30).

7. I do not have the right to have my Loan discharged in bankruptcy during the first seven years of the repayment period. This prohibition against the discharge of a Federal HEAL loan applies to bankruptcy under any chapter of the Bankruptcy Act, including Chapter 13. I may have a Federal HEAL loan discharged in bankruptcy after the first seven years of the repayment period, excluding any periods of forbearance and deferment, only upon a finding by the Bankruptcy Court that the non-discharge of such debt would be unconscionable and upon the condition that the Secretary shall not have waived his or her rights to reduce any Federal reimbursements or Federal payments for health services under any Federal law in amounts up to the balance of the Loan.

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing burden to:

Reports Clearance Officer
Attention, PRA United States Public Health Service
Hubert H. Humphrey Building, Room 721-H
200 Independence Avenue, S.W.
Washington, D.C. 20201

and to the Office of Management and Budget
Paperwork Reduction Project (0915-0043)
Washington, D.C. 20503

## PUBLIC REPORTING BURDEN STATEMENT

Public reporting burden for this collection of information is estimated to average 32 minutes per response for applicants, 32 minutes per response for schools, and 30 minutes per response for lenders, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to:

Reports Clearance Officer
   Attn: PRA
U.S. Public Health Service
Hubert H. Humphrey Building, Room 721-H
200 Independence Avenue, S.W.
Washington, D.C. 20201
and to the

Office of Management and Budget
Paperwork Reduction Project, 0915-0038
Washington, D.C. 20503

## EQUAL CREDIT OPPORTUNITY ACT NOTICE

The Federal Equal Opportunity Act prohibits creditors for discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age(provided the applicant has the capacity to contract in accordance with applicable State law), because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agencies that administer compliance with this law are listed Below.

- A. Federal Reserve System
  20th Street and Constitution Avenue, N.W.
  Washington, D.C. 20551

- B. Office of the Comptroller of the Currency
  490 L'Enfant Plaza East. S.W.
  Washington, D.C. 20219

- C. Federal Deposit Insurance Corporation
  550 17th Street, N.W.
  Washington, D.C. 20429

- D. Federal Home Loan Bank Board
  101 Indiana Avenue, N.W.
  Washington, D.C. 20522

- E. National Credit Union Administration
  2025 M Street, N.W.
  Washington, D.C. 20456

- F. Federal Trade Commission
  6th Street and Pennsylvania Avenue, N.W.
  Washington, D.C. 20580

## PRIVACY ACT NOTIFICATION STATEMENT

The Privacy Act of 1974 (5 U.S.C. 552a) requires that an agency provide the following notification to each individual whom it asks to supply information. The following information is contained in the system of records 09-15-0044, entitled "Health Education Assistance Loan Program (HEAL) loan control master file, HHS/HRSA/BHPr." Some information may be maintained in the records system 09-15-0045, entitled "Health Resources and Services Administration Loan Repayment/Debt Management Record Systems, HHS/HRSA/OA."

1. The authority for collecting the requested information is found in Sections 727 and 728 of the Public Health Services Act, as amended (42 U.S.C. 294), Sections 739 of the Public Health Services Act, (42 U.S.C. 294), Debt Collection Act of 1982 (5 U.S.C. 5514 Note), and Section 222 of the Health Professions Training Assistance Act of 1985 (50 U.S.C. App. 462 Note).

2. The principal purposes of this information are as follows:
   - -to verify the identity of the applicant;
   - -to determine program eligibility and benefits;
   - -to permit servicing of the loan; and
   - -in the event it is necessary, to locate missing borrowers and collect on delinquent and defaulted loans.

3. The disclosure of this information may be made to the following:
   a. to the educational institutions in which the borrower is enrolled or is accepted for enrollment;
   b. to guarantee agencies;
   c. to contractors which assist the Public Health Service in the administration of the Federal HEAL Program;
   d. to other Federal agencies, the Office of Management and Budget, the Department of the Treasury, consumer reporting agencies, debt collection bureaus, and other private and public parties.

The purpose od such disclosures is to locate delinquent borrowers; to determine borrowers' creditworthiness and their ability to repay their debts; to aid in the collection of debts owed under the Federal HEAL Program; and to the Director, Selective Service, for the purpose of determining if draft-eligible students participating in the Federal HEAL Program are registrants of the Selective Service System. Disclosure of records will consist of the individual's name, social security account number, the other information necessary to establish the identity of the individual, the amount, status, and history of the claim, and the agency or program under which the claim arose. The information may be furnished during the life of the loan to holders of this and other loans made to the borrower under the Federal HEAL Program.

Section 3(c) of the Privacy Act (5 U.S.C. 552a) requires that an agency keep an accounting of disclosures of individually identified information from a system of records to all third parties outside the Department of Health and Human Services. Upon and individual's written request to the System Manager, an agency must make the accounting of such disclosures available to the subject individual.

FORM HRSA-700--Applicants must provide all of the information requested in order to have their applications processed.

Section 7(b) of the Privacy Act of 1974(U.S.C. 552a Note) requires that where any Federal, State or local government agency requests an individual to disclose his or her social security account number (SSN), that the individual must also be advised whether that disclosure is mandatory or voluntary, by what statutory or other authority the SSN is solicited, and what uses will be made of it.

Disclosure of the applicant's SSN is mandatory for participation in the Federal HEAL Program as provided for by Section 4 of the Debt Collection Act of 1982 (26 U.S.C. 6103 Note). Applicants are advised that failure to provide his/her SSN will result in the denial of the individual to participate in the Federal HEAL Program. The SSN will be used to verify the identity of the applicant and as an account number (identifier) throughout the life of the loan to record necessary data accurately. As an identifier, the SSN is used in such program activities as: determining program eligibility; certifying school attendance and student status; determining eligibility for deferment of repayment; determining eligibility for disability or death claims, and for tracing and collecting in cases of delinquent or defaulted loans.

## FINANCIAL PRIVACY ACT

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3412), the Public Health Service will have access to financial records in your student loan file maintained by the lender in connection with the administration of the Federal HEAL Program.

## VERIFICATION AND SWORN STATEMENT OF ACCOUNT

I, Patricia Walton, after being duly sworn, state that I am the Administrative Officer of the Guarantor Insurer Relations Division, a division of the Pennsylvania Higher Education Assistance Agency, and as such, I am authorized to attest to the foregoing facts on behalf of Pennsylvania Higher Education Assistance Agency. I have personal knowledge of the books, accounts, and records, including specifically that of Timothy R. Merrell, as set forth in Paragraph 10 of this Verified Complaint. I have reviewed all of the factual allegations of the foregoing Verified Complaint and I hereby verify and attest that all of the factual allegations are true and correct to the best of my knowledge, information, and belief as based upon the books, accounts, and records of Pennsylvania Higher Education Assistance Agency.

                                        *Patricia Walton*
                                        Patricia Walton
                                        Administrative Officer
                                        Guarantor Insurer Relations Division

Sworn to and subscribed before me
this ___27___ day of May, 2004.

*Karen L. Stefanic*
Notary Public

My commission expires:

> NOTARIAL SEAL
> KAREN L. STEFANIC, Notary Public
> City of Harrisburg   Dauphin County
> My Commission Expires Sept. 13, 2005



EXHIBIT 2